IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

                    Plaintiff,

          vs.

STEVEN M. SULLIVAN

                    Defendant.

4:11CR3034

FINDINGS AND
RECOMMENDATION

This matter is before the court on Defendant Steven M. Sullivan's Motion to Vacate under 28 U.S.C. § 2255 (Filing No. 113).  For the reasons set forth below, the motion should be denied.

BACKGROUND

On March 23, 2011, a federal grand jury sitting in the District of Nebraska returned an indictment charging Sullivan with possession with intent to distribute controlled substance analogues in violation of 21 U.S.C. §§ 802(32)(A), 813, and 841.  The Indictment also included an allegation to forfeit $5,813.00 as proceeds of Defendant's illegal conduct.  The facts underlying the indictment arose from a traffic stop occurring on October 27, 2010.  During that stop, Otoe County, Nebraska Sheriff's Deputy James Parsons found a white power identified as bath powders in Sullivan's vehicle.

Sullivan pled not guilty at his initial appearance, and during the pretrial phase of his case, he moved to dismiss the indictment and to suppress certain evidence discovered during the traffic stop.  On August 9, 2011, the undersigned magistrate judge conducted an evidentiary hearing on the motions.

Based on the hearing testimony, the court found that during the traffic stop, and while waiting for dispatch to provide information on Sullivan's driving privileges, Deputy Parsons deployed his police dog, Kane, to conduct an exterior sniff of the car. Kane alerted and indicated to the odor of narcotics.  Law enforcement officers searched the vehicle and found a large plastic bag filled with white powder Sullivan identified as "bath powders;" approximately 100 smaller 2x2 plastic, sealable bags; plastic labels indicating how to use the "bath powders;" $5,813 in currency; and business records.

The undersigned recommended Defendant's motions to suppress and to dismiss be denied.  Filing No. 38.  Over Defendant's objections, the Findings and Recommendation were adopted by Judge Richard G. Kopf, the assigned district judge.  (Filing No. 40).

At trial, Deputy Parsons again testified regarding the traffic stop.  Deputy Parsons' trial testimony differed from his testimony at the Motion to Suppress hearing.   At the suppression hearing Parsons testified as follows:

A.	. . . .  I asked Mr. Sullivan if he had anything illegal . . .  in his car.
Q.	Okay.
A.	 And he said, "**No**, I just have K2 and some bath powder."

Filing No. 104 at CM/ECF p. 37, STr. at 30:14-19 (emphasis added).

At trial Parsons, testified as follows:

A.	. . . . I asked Mr. Sullivan, I said, "Is there" -- "Do you have anything illegal in your car?" And Mr. Sullivan said, "I have K2."
. . .
Q.	After he said, "I have K2"?

2

> A. I said, "Is there anything else?"
>
> Q. And did he respond?
>
> A. And his response was, "Well, there's bath powders." And I didn't think anything about it.

Filing No. 104 at CM/ECF p. 182-83: ATr. at 182:16-19; 183 at 3-6.

Deputy Parsons' trial testimony differed from his suppression hearing testimony in one important respect: At trial, he testified that Sullivan initially said, "No" when asked if he had anything illegal in the car and before stating he possessed K2 and bath powders. Sullivan's counsel did not impeach or otherwise question Deputy Parsons about this distinction during the trial.

The government's trial evidence was primarily expert testimony. Ms. Liqun Wong, the Unit Chief for the Analysis Unit in the Office of Diversion Control in the DEA headquarters, testified the chemical structure of the substance found in Sullivan's car – mephedrone – is substantially similar to the chemical structure of methcathinone, a Schedule I controlled substance. (Filing No. 104 at CM/ECF p. 34; ATr. at 34:10-22). She explained how substances marked as bath salts or powders are typically sold to a retailer as a bulk powder, and are later packaged and labeled in small sealable plastic bags when the buyer intends to distribute the bath salts for human consumption. (Filing No. 104 at CM/ECF p. 51; ATr. at 51:3-52:18).

Dr. Cassandra Prioleau, a pharmacologist employed by the DEA, testified that mephedrone, the substance found in Sullivan's vehicle, had the same pharmacological effect on the body as other known drugs of abuse. Specifically, she opined mephedrone had a substantially similar effect on the central nervous system as methcathinone, a Schedule I controlled substance. (Filing No. 104 at CM/ECF p. 75; ATr. at 75:2-76:4).

Lincoln Police Department Officer Christopher Vigil testified that as part of his undercover work, he visited "head shops," defined as "retail stores that sell tobacco and smoking accessories." (Filing No. 104 at CM/ECF p. 139; ATr. at 139:18-21).  Officer Vigil testified that head shops sell many items intended for use in ingesting narcotics.  He described finding two types of products labeled as "bath salts" in the head shops.  The type used to scent a bath was sold as a "big bath salt or bath crystal that was relatively cheap."  "However, [t]he bath salts . . . intended for human consumption or for getting high," like that found in Sullivan's vehicle, "would be like a two-inch by two-inch Ziplock baggie . . . and I could see a white grainy powder inside the package." (Filing No. 104 at CM/ECF p. 141; ATr. at 141:19-23; 142:2-3).  Officer Vigil explained that bath salts in Ziplock baggies sell at a substantially higher cost than uncut bath salts.  And bath salts meant for illicit purposes often contain labels that are "less descriptive" than labels found on legitimate bath salts.

On December 21, 2011, the jury returned a guilty verdict on Count I, and found the $5,813.00 identified in the forfeiture allegation should be returned to Sullivan. (Filing No. 60).  Sullivan appealed the decision, arguing a lack of sufficient evidence to find mephedrone is a controlled substance, the controlled substance act is vague, and there was insufficient evidence to prove Sullivan intended to distribute the mephedrone for human consumption.  The Eighth Circuit Court of Appeals upheld the jury verdict.  In doing so, the court cited Deputy Parson's trial testimony that, upon being asked if he had anything illegal in his car, Sullivan responded he had K2 and, upon further questioning, Sullivan stated he also had "bath powder."

Sullivan timely filed a motion under 28 U.S.C. § 2255 on May 5, 2014, alleging sixteen claims of ineffective assistance of counsel regarding both his trial counsel – Mr.

Glenn Shapiro and his appellate counsel – Mr. Daniel Lynn Viets.  Upon initial review, Judge Kopf dismissed all but the following:

| | |
|---|---|
| Ground 4: | Ineffective Assistance: Failure to Move for Suppression of Statement Given in Violation of <u>Miranda</u>. |
| Ground 7: | Ineffective Assistance of Trial Counsel for Not Objecting to Prosecutorial Misconduct. |
| Ground 8: | Ineffective Assistance: Failure to Impeach the Government's Key Witness with Prior Inconsistent Testimony. |
| Ground 9: | Ineffective Assistance: Failure to Point Out Key Contradictions to the Court of Appeals. |
| Count 12: | Ineffective Assistance of Trial Counsel for Failing to Move for a <u>Daubert</u> Hearing to Exclude the Testimony of Government Expert Dr. Cassandra Prioleau. |
| Count 16: | Ineffective Assistance of Counsel:  Failure to Challenge and Initiate an Investigation into James Parsons' Fabrication of Probable Cause. Significant Suppression and Dismissal Issues were Ignored and Disregarded by Counsel. |

An evidentiary hearing was held before the undersigned magistrate judge on April 1, 2015.  The hearing focused on Sullivan's claim that his trial counsel was ineffective because counsel failed to impeach Deputy Parsons using the officer's inconsistent testimony from the suppression hearing, and his appellate counsel was ineffective in failing to raise this impeachment issue before the Eighth Circuit.

## ANALYSIS

A motion to vacate, set aside, or correct a sentence may be based upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255.  Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.  A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.  United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

> To sustain an ineffective assistance of counsel claim, [Defendant] must show that (1) "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068.

Nguyen v. United States, 114 F.3d 699, 703-04 (8th Cir. 1997).

A "reasonable probability" is less than more likely than not, but must be compelling enough to "undermine confidence in the outcome." Strickland, 466 U.S. at 694.  It "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

Ground 8:  Failure to impeach Deputy Parsons at trial.

Sullivan claims Shapiro provided ineffective assistance because he failed to adequately impeach Deputy Parsons at trial.  Failure to impeach a witness with a prior inconsistent statement is not per se ineffective assistance of counsel.  See Hall v. Luebbers, 296 F.3d 685, 695-96 (8th Cir. 2002); see also United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006).  However, if the prejudice caused by the failure to impeach or

otherwise question a witness meets the two prongs of the <u>Strickland</u> test, it may support a successful claim of ineffective assistance of counsel.  See <u>Steinkuehler v. Meschner, 176 F.3d 441, 444-46 (8th Cir. 1999)</u>.

During the hearing on Defendant's § 2255 motion, Shapiro admitted he did not impeach Deputy Parsons with his prior inconsistent statement.  And this failure was not a trial strategy but rather caused, at least in part, by an oversight.  (See <u>Filing No. 130 at 16:40-17:20</u>).  Thus, the question is whether this oversight fell below an objective standard of reasonableness and if so, whether it prejudiced Sullivan:  Is there a reasonable probability that the jury would have reached a verdict of not guilty had Shapiro impeached the officer?

Upon review of the trial and suppression hearing transcripts, the undersigned magistrate judge is not convinced that Mr. Shapiro's representation fell below an objective standard of reasonableness.  Defendant's trial was about bath powders, not K2. Based on Deputy Parsons' trial testimony, Sullivan admitted K2 was illegal.  He then disclosed the presence of bath powders in response to the follow up question, "Is there anything else?"   Had defense counsel attempted to impeach the officer over the discrepancy between the trial and suppression hearing testimony, the government could have rehabilitated the officer fairly easily.  In doing so, the officer could have re-stated, repeated and explained a portion of his testimony that was clearly not helpful to the defendant and was not otherwise being emphasized by the government.  The government mentioned Sullivan's alleged admission only in passing during opening and closing arguments.  Under such circumstances, objectively reasonable defense counsel may have purposefully decided not to mention the alleged discrepancy.

But even assuming Mr. Shapiro's representation was unreasonable because he failed to adequately impeach Deputy Parsons, the defendant has failed to prove prejudice.

Knowledge is an essential element for proving a defendant violated 21 U.S.C. §§ 802(32)(A), 813, and 841..  After the hearing on Sullivan's § 2255 motion, the Supreme Court clarified what knowledge means for the purposes of the Analogue Act.  See McFadden v. United States, 135 S. Ct. 2298, 2305, (2015) (discussing the mens rea necessary for a conviction under the Analogue Act).[1]  Under McFadden:

> [Knowledge] can be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance. Second, it can be established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue. The Analogue Act defines a controlled substance analogue by its features, as a substance "the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II"; "which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" the effect of a controlled substance in schedule I or II; or which is represented or intended to have that effect with respect to a particular person. § 802(32)(A). A defendant who possesses a substance with knowledge of those features knows all of the facts that make his conduct illegal.  A defendant need not know of the existence of the Analogue Act to know that he was dealing with "a controlled substance."

McFadden 135 S. Ct. at 2305.

Deputy Parsons' trial testimony may provide direct evidence that Sullivan knew "bath powders" were illegal, and impeaching Deputy Parsons could have created uncertainty about the credibility of Deputy Parsons' testimony.  Through that impeachment process, the jury would have heard that when originally asked if he had

---

[1] McFadden was argued to the Supreme Court two weeks after the hearing on Defendant's § 2255 motion, with the Court's opinion released two months later.  Since this is a report of findings and recommendation, the undersigned magistrate judge has not requested additional briefing on this post-hearing Supreme Court case.  Instead, the parties can raise their respective arguments, if any, about the impact of McFadden in any briefing to Judge Kopf regarding this recommendation.

anything illegal in his car, Sullivan responded:  "No, just K2."  The government would then have to rehabilitate Deputy Parsons, perhaps by using his written report to refresh his recollection.  See Filing No. 124 at CM/ECF pp. 26-27.

But Sullivan's counsel did not ignore Deputy Parsons' testimony.  He addressed it during his closing arguments.  Shapiro pointed out that K2 and bath powders were not listed as illegal under Nebraska state law at the time of the stop—calling into question how Sullivan would likely have responded to Deputy Parsons' question about whether he possessed anything illegal.  (Filing No. 104 at CM/ECF p. 250-51; ATr. 250:12-251:12).  Shapiro suggested the Deputy Parsons' testimony was not true:  Would Sullivan likely consider K2 "illegal," and answer the officer's question accordingly, when the chemical was not illegal under state law?  Id.

The government did not focus of what Sullivan said, but rather on circumstantial evidence to prove Sullivan possessed the requisite knowledge that he was committing a criminal act; that is, that Sullivan knew he possessed a substance "which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" the effect of a schedule I or II controlled substance; or which is represented or intended to have that effect with respect to a particular person" – i.e, a substance that would produce a "high" substantially similar to a controlled substance. See McFadden v. United States, 135 S. Ct. at 2305.  To meet its burden, the government presented testimony from experts discussing the structural composition of bath salts, their likely effect if consumed by a human, and the typical packaging and sale of bath powders intended for human consumption.

Even absent Deputy Parsons' testimony, the circumstantial evidence against Sullivan supports a jury finding that Sullivan had the requisite knowledge as required under McFadden.  The government's evidence included:  1) testimony about the

distinction between the sale of legitimate bath salts and those compounds marketed as bath salts, but actually intended for human consumption; 2) that the packaging and composition of illegal bath salts and powders found in head shops matched the description and intended packaging of the bath powders found in Sullivan's vehicle; 3) the economics of selling illegal bath salts, specifically that these compounds are typically sold for around $60 per small sealable plastic bag containing a gram or two of powder, whereas legitimate bath salts, sold as large crystals, sold for closer to $10; and that due to the quantity and packaging, the bath salts and powders in Sullivan's vehicle were clearly not intended for bathing; that "no one" was acquiring mephedrone to actually use in a bath.   (Filing No. 104 at CM/ECF pp. 52; 142-43; ATr. at 52:7-11,142:1 – 143:8). Deputy Parsons testified Sullivan was unusually nervous when he was pulled over, (Filing No. 104 at CM/ECF p. 179; ATr. at 179:9-11; 180:1-20), and professed to making a living blowing glass pipes and selling them to head shops – thereby creating a connection between himself and stores which sell illegal bath powders.   (Filing No. 104 at CM/ECF p. 181; ATr. at 181:14-22).

Even if Mr. Shapiro had impeached Deputy Parsons regarding Sullivan's roadside denial of possession of an illegal substance, the trial evidence supported a finding that Sullivan knew he possessed a substance which had the effect of a Schedule I or II controlled substance if ingested.   See McFadden at 135 S.Ct. 2298.   While impeaching Deputy Parsons may have been helpful, the defendant has not shown a reasonable probability that but for Mr. Shapiro's failure to impeach Deputy Parsons, the result of the proceeding would have been different.   Absent proving prejudice, Defendant's motion to set aside his conviction and sentence for failing to impeach Deputy Parsons at trial should be denied.

Ground 9: <u>Failure of counsel, on appeal, to point out contradictions in Deputy Parsons' testimony</u>.

Sullivan argues his appellate counsel, Daniel Viets, failed to raise the issue of Deputy Parsons' inconsistent testimony on appeal. "When a claim involves appellate counsel, a petitioner must show that 'there is a reasonable probability that the result of the direct appeal would have been different if the argument had been made.' " Carter v. Bowersox, 265 F.3d 705, 713–14 (8th Cir. 2001) (quoting Chambers v. Bowersox, 157 F.3d 560, 566 (8th Cir.1998)).

As an initial matter, since the trial evidence otherwise supported a finding of guilt, even had the impeachment issue been raised on appeal, that claim would likely have been deemed "harmless error." United States v. Aldridge, 664 F.3d 705, 714-15 (8th Cir. 2011) (holding the court "will not reverse a conviction if an error was harmless."). As such, the defendant cannot meet his burden of proving he was prejudiced by his appellate counsel's failure to raise Deputy Parsons' inconsistent testimony on appeal.

The appeal filed by Mr. Viets on Sullivan's behalf alleged the evidence was insufficient to prove Sullivan knew mephedrone was a controlled substance analogue, and that Sullivan intended to distribute it for human consumption. United States v. Sullivan, 714 F.3d 1104, 1106 (8th Cir. 2013), reh'g denied (July 9, 2013). The Eighth Circuit denied Defendant's appeal, explaining:

> A reasonable juror could find Sullivan knew he was in possession of a controlled substance analogue. When Parsons asked Sullivan whether the vehicle contained anything illegal, Sullivan told him the vehicle contained bath powder. Trial Tr. 183. At the time of the arrest, the mephedrone in the powder was illegal only under the CSAEA as a controlled substance analogue. Id. at 40, 53, 90. Accordingly, Sullivan indicating the bath powder was illegal supports a reasonable inference he knew the powder contained a controlled substance analogue.

Sullivan, 714 F.3d at 1107.

Under <u>McFadden</u>, the government need not prove the defendant knew the legal status of an analogue substance.  <u>McFadden, 135 S. Ct. at 2305</u>.  If the defendant knew he possessed a substance which has, if consumed by a human, a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than a schedule I or II controlled substance, the defendant "knows all of the facts that make his conduct illegal."  <u>McFadden, 135 S. Ct. at 2305</u>.  As to Defendant's knowledge in that regard, the Eighth Circuit's opinion cited Officer Vigil's testimony regarding the typical packaging, pricing, and sale of mislabeled bath salts in head shops in Lincoln, Nebraska, including that the labels seized from Sullivan's vehicle "advertised a feeling of bliss" from using the mephedrone powder.  The circuit court also cited the testimony of DEA unit chief Liqun Wong, who stated distributors purchased powder in bulk and repackaged it in ready-to-use packages, the packages were misleadingly labeled as bath salts and sold in head shops, and mephedrone powder is used for obtaining a "high" and "no one" would use mephedrone in actual baths.

Upon review of a conviction, the Court of Appeals must "view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by the evidence."  <u>United States v. Milk, 447 F.3d 593, 598 (8th Cir. 2006)</u>.  The conviction will be reversed only if the Court determines "no reasonable jury could have found the defendant guilty beyond a reasonable doubt."  <u>United States v. Wells, 706 F.3d 908, 914 (8th Cir. 2013)</u>.  Although the Eighth Circuit's reasoning on the knowledge element relied upon Sullivan's alleged admission of possessing an illegal substance, as outlined in the Eighth Circuit's opinion, there was ample circumstantial evidence that Sullivan knew ingesting mephedrone powder would cause a "high" ("a feeling of bliss") substantially similar to or greater than a schedule I or II controlled substance.  There being other and substantial evidence supporting the guilty verdict, Defendant has not proved he was prejudiced by his appellate counsel's failure to raise Deputy Parsons' inconsistent testimony on appeal.

Ground 4:   Failure to Move for Suppression of Statement Given in Violation of Miranda.

Miranda warnings are required when an individual has been subjected to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in custodial surroundings." Id. at 444. When a motorist is briefly detained during a roadside stop, he is typically not in custody for the purposes of Miranda. See Berkemer v. McCarty, 468 U.S. 420 (1984). The brief detention of a motorist during a traffic stop is not the functional equivalent to a custodial interrogation, particularly when the detention is temporary and the motorist is asked only a modest number of questions. See United States v. Morse, 569 F.3d 882, 884 (8th Cir. 2009)(finding Miranda warnings were unnecessary during a traffic stop when a police officer asked the defendant if the defendant had anything in the car of which the officer should know).

While Deputy Parsons waited for dispatch's response to a records check, Deputy Parsons asked Sullivan if he had anything illegal in his car. This conduct does not rise to the level of a custodial interrogation necessitating the issuance of Miranda warnings. As briefly addressed by the undersigned magistrate judge during the suppression hearing, even had defense counsel moved to suppress Sullivan's statements, the motion would have been unsuccessful. Sullivan was not prejudiced by counsel's failure to move to suppress Sullivan's statements made during the traffic stop.

Ground 7:   Failure to raise a prosecutorial misconduct objection.

Sullivan alleges counsel for the government committed prosecutorial misconduct by impermissibly shifting the burden of proof onto Sullivan during her closing arguments. Specifically, Sullivan argues the prosecutor inappropriately suggested

Sullivan needed to exercise his subpoena power and call experts to refute the testimony of the government's witnesses.  Sullivan argues defense counsel should have objected to the government's arguments, and the failure to do so was ineffective assistance of counsel.

"To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial."  United States v. King, 36 F.3d 728, 733 (8th Cir. 1994).  "In closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case."  United States v. Flynn, 196 F.3d 927, 930 (8th Cir. 1999)(citing United States v. Kragness, 830 F.2d 842, 872 (8th Cir. 1987)).  This may include, under certain circumstances, a reference to the defendant's subpoena power.  United State v. Yu, 484 F.3d 973, 986 (8th Cir. 2007).

All of the alleged improper arguments cited by Sullivan occurred during the government's rebuttal, and each such argument responded to statements made during defense counsel's closing argument.  For instance, defense counsel referenced bank deposit slips as evidence the bath salts were purchased as a part of a legitimate business transaction.  (See Filing No. 107 at CM/ECF p. 248, ATr. 248:21-22).  On rebuttal, the government noted there were no deposit slips in evidence.  (Id. at CM/ECF p. 267; ATr. at 267:9-10).  And in response to Sullivan's argument that the bath powders were a part of a legitimate transaction with a business called Purity Brokers, the government noted there was no such evidence of record.  (Id., ATr. at 267:5-8).

More troubling are the comments by the prosecutor in response to defense counsel's attack on the apparent inconsistencies in the testimony of the three experts presented by the government.  On rebuttal, the prosecution argued that if Defendant

14

disagreed with the government's experts, he could have found his own.  She did not, however, suggest Defendant was obligated to do so.

During the trial, Sullivan's counsel vigorously cross-examined the government's experts and pointed out apparent inconsistencies in their respective testimonies.  And at the close of the trial, the instructions to the jury clearly stated the government had the burden of producing evidence against Sullivan, not vice versa.  Under such circumstances, the impact of the government's comments regarding Sullivan's failure to call his own expert was not prejudicial to Sullivan receiving a fair trial.

Ground 12:   Failure to file a Daubert motion.

Sullivan argues his trial counsel was ineffective because he failed to request a hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). Sullivan claims the testimony of Dr. Cassandra Prioleau was inadmissible under Daubert, and allowing the testimony prejudiced Defendant.  To prove prejudice, Sullivan must establish that had counsel requested a Daubert hearing, the request would have been granted, and the testimony of Dr. Prioleau would have been excluded.

"Trial judges are the gatekeepers to exclude unreliable scientific testimony." United States v. Holmes, 751 F.3d 846, 850 (8th Cir. 2014).  In determining the reliability of expert testimony, the trial court can use the non-exclusive list of Daubert factors including:

> (1) whether the theory or technique can and has been tested, (2) whether it has been subjected to peer review, (3) whether there is a high known or potential rate of error, and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

Holmes, 751 F.3d at 850.  Doubts about the usefulness of expert testimony are resolved in favor of admissibility.  See Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 562 (8th Cir. 2014).  Exclusion of an expert's testimony is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury."  Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997)(internal citations omitted).

Dr. Prioleau is a "desk" pharmacologist employed by the DEA who evaluates the abuse potential of emerging drugs.  (Filing No. 104 at CM/ECF p. 60, ATr. at 60:18-20).  She testified the powdery substance found in Sullivan's car was structurally similar to controlled substances and opined it would, upon ingestion, affect a person in a manner similar to a stimulant.  Defense counsel vigorously cross-examined Dr. Prioleau on her methodology and called her opinions into question, but in the end, Defendant was convicted.

Dr. Prioleau researched peer-reviewed articles, conducted a structural activity relationship data comparison, and reviewed other scientific and medical literature before concluding mephedrone powder is an illegal analogue.  The methodology underlying Dr. Prioleau's opinions undoubtedly met the Daubert requirements.  It is unlikely that had a request been made, Defendant would have been granted a Daubert hearing.  And had a Daubert hearing been held, .Dr. Prioleau's opinions testimony would not have been excluded or limited by the court.

As such, Sullivan's claim of ineffective assistance of counsel for failing to file a Daubert motion lacks merit.

Claim 16:        Probable Cause for the Stop.

Sullivan argues Shapiro was ineffective because he failed to sufficiently challenge the grounds for the traffic stop and failed to adequately pursue the issue of Deputy Parsons' malfunctioning camera and video equipment.

Deputy Parsons testified he used visual techniques and radar to determine if Sullivan was speeding.  (Filing No. 104 at CM/ECF p. 173, ATr. at 172:25 – 173:1-4). "It is well established that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." United States v. Washington, 455 F.3d 824, 826 (8th Cir. 2006).  Deputy Parsons testified his in-car audio and visual equipment was unreliable.  During the suppression hearing, Mr. Shapiro cross-examined Deputy Parsons about the traffic stop and questioned him specifically about how he was able to determine Sullivan was speeding.  He further questioned Deputy Parsons about the malfunctioning video equipment during trial and alluded to it during his closing arguments.

Despite Mr. Shapiro's zealous cross-examination, at the close of the suppression hearing, the undersigned magistrate judge found Deputy Parsons' testimony credible and that the officer had probable cause to initiate a traffic stop.  Likewise, Deputy Parsons was cross-examined at trial, and the jury was able to assess the officer's credibility regarding the condition of his in-car audio/visual equipment and the reason for the stop.

Sullivan has not shown any prejudice arising Mr. Shapiro's trial strategy regarding the traffic stop and its recording.  There is no basis for Defendant's claim of ineffective assistance of counsel for failing to challenge the traffic stop, or to adequately question the officer's assertion that his video and audio recording equipment malfunctioned.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the Motion to Vacate under 28 U.S.C. § 2255 (Filing No. 113) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 2nd day of October, 2015

BY THE COURT:
*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.